# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Todd William Cunningham,

          Petitioner,                  Case No. 5:24-cv-12415

                                   Honorable Judith E. Levy

v.                                   United States District Judge

Kim Cargor,                         Mag. Judge David R. Grand

          Respondent.

_____/

## OPINION AND ORDER DISMISSING WITH PREJUDICE THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, DENYING PETITIONER LEAVE TO APPEAL IN FORMA PAUPERIS, DENYING PETITIONER'S MOTION FOR THE APPOINTMENT OF COUNSEL [15], GRANTING PETITIONER'S MOTION TO SUPPLEMENT THE RECORD [16], AND DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT [17]

Petitioner Todd William Cunningham, who is confined at the Cotton Correctional Facility in Jackson, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for conspiracy to commit armed robbery (Mich. Comp. Laws § 750.529; Mich. Comp. Laws § 750.157a), assault with intent to rob while armed (Mich. Comp. Laws § 750.89), felon in possession of a firearm (Mich. Comp. Laws § 750.224f), and three counts

of possession of a firearm during the commission of a felony (Mich. Comp. Laws § 750.227b).

For the reasons set forth below, the petition for a writ of habeas corpus (ECF No. 1) is dismissed with prejudice.

## I. Background

Petitioner was convicted following a jury trial in the Muskegon County Circuit Court. This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See also Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's convictions arise from a conspiracy between defendant, Michael Monson, and Tabitha Bledsoe to rob a drug dealer named Mark Cheatum on August 13, 2019. Early that morning, Bledsoe called Cheatum to arrange purchasing drugs. Bledsoe met Cheatum on a street near defendant's home and according to defendant's instructions Bledsoe directed Cheatum to drive down a nearby alley where defendant and Monson lay in wait. However, the robbery attempt ultimately proved unsuccessful. While Bledsoe sat in Cheatum's vehicle in the alley, defendant and Monson approached on foot carrying guns and wearing masks and gloves. Monson shot at Cheatum's vehicle, but Cheatum escaped by running over Monson with his car and driving

away. Defendant also repeatedly shot at the vehicle. Cheatum immediately drove to a police station to report the incident.

Bledsoe and Monson testified at trial admitting that they planned to rob Cheatum. The jury also viewed bodycam footage of Cheatum describing the incident to a police officer. Cheatum, however, did not testify at trial. The prosecutor also introduced surveillance video from inside and outside defendant's home on the morning of the incident. Defendant testified on his own behalf, acknowledging that he armed himself with a gun and that he agreed to have Monson's "back." He maintained, however, that once outside in the alley, he and Monson abandoned their robbery plan. According to defendant's version of events, Cheatum repeatedly ran over Monson with his vehicle for no reason, and defendant shot at Cheatum in an attempt to save Monson's life.

*People v. Cunningham*, No. 359176, 2023 WL 3666465, at \*1 (Mich. Ct.

App. May 25, 2023), *leave denied*, 513 Mich. 888 (2023).

Petitioner seeks habeas relief on the following grounds:

I. "Habeas relief should issue where the state courts opined that the circumstances of the victim's statements to police were indicative of an ongoing emergency and therefore nontestimonial and admissible, and that Mr. Cunningham's Sixth Amendment right of confrontation was not violated. In the alternative, trial counsel was ineffective for failing to object to the police recordings shown to the jury." (ECF No. 1, PageID.20.)

3

II. "Mr. Cunningham's constitutional right to due process of law . . . was violated when Mr. Cunningham was entitled to a defense of others jury instruction, and trial counsel[ ] was ineffective when he failed to request it; writ of habeas corpus shall lie." (*Id.* at PageID.29.)

III. "Habeas relief should issue where the state court erred when it claimed that 'on the existing record, there is no factual support for petitioner's contention that the police destroyed any video evidence' when it is clear that Petitioner was denied his due process right to a fair trial when the prosecution failed to provide the requested missing security camera video and appellate counsel recently had discovered that the Muskegon Heights Police had reformed the DVR to factory settings and permanently erased all the video footage leaving Petitioner with no way to investigate his defense." (*Id.* at PageID.37–38.)

IV. "A writ of habeas corpus should lie where the state court erred when it opined that 'the prosecution did not attempt to use Monson's guilty plea as substantive evidence against Defendant, nor did the prosecution advance an argument that Defendant should be found guilty by association because Monson pleaded guilty. Instead, the prosecution offered evidence that Monson pleaded guilty to armed robbery[']; thus, denying petitioner a fair trial[ ]." (*Id.* at PageID.41.)

V. "Petitioner was denied the effective assistance of counsel guaranteed by the federal and state constitutions . . . and the state court erred when it denied Petitioner's remand for a *Ginther* hearing." (*Id.* at PageID.43.)

VI. "Habeas corpus relief should issue where the state court erred when it relied on erroneous factual findings not

4

supported by the record and it negatively impacted the integrity of Petitioner's conviction." (*Id.* at PageID.50.)

VII. "Habeas corpus relief and an evidentiary hearing should be granted where evidence was destroyed, reformatted, erased, evidence not delivered by those who claimed they did, and it was discovered after trial that Detective Petty committed possible *Brady/Giglio* violations." (*Id.* at PageID.55.)

## II. Legal Standard

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

6

## III. Analysis

### A. Petitioner's first claim: The Confrontation Clause

As part of his first claim, Petitioner argues that the state court erred in allowing the admission of footage of Cheatum's out-of-court statement, which was recorded on Officer Durr's body-worn camera. (ECF No. 1, PageID.22.) Petitioner claims that this statement was testimonial and that the admission of this evidence violated his Sixth Amendment right to confrontation.[1] The Michigan Court of Appeals rejected Petitioner's claim, ruling that Cheatum's statement was nontestimonial because it was describing an on-going emergency. *Cunningham*, 2023 WL 3666465, at *3.

Out-of-court statements that are testimonial in nature are barred by the Sixth Amendment's Confrontation Clause unless the witness is

---

[1] Respondent urges this Court to deny this claim on the ground that it is procedurally defaulted because Petitioner failed to object at trial. Petitioner argues alternatively in his first claim that his counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted Confrontation Clause claim, the Court will consider the merits of the claim. *See Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). The Court will address Petitioner's related ineffective assistance of counsel claim when discussing all of his ineffective assistance of counsel claims, *infra*.

unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36, 54, 63 (2004). However, the Confrontation Clause is not implicated, and thus need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823–26 (2006).

Statements taken by police officers during the course of police questioning are considered "nontestimonial" and not subject to the Confrontation Clause when they are made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822. In contrast, statements are considered testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

Whether the "primary purpose" of an interrogation is to enable police to meet an ongoing emergency requires an objective evaluation of "the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Bryant*, 562 U.S. 344, 359 (2011).

8

Courts must assess whether an ongoing emergency existed "from the perspective of the parties to the interrogation at the time, not with the benefit of hindsight." *Id.* at 361 n.8. "If the information the parties knew at the time of the encounter would lead a reasonable person to believe that there was an emergency, even if that belief was later proved incorrect, that is sufficient for purposes of the Confrontation Clause." *Id.* "The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation." *Id.* at 370.

Additionally, a court's determination of whether an "ongoing emergency" existed is "a highly context-dependent inquiry." *Id.* at 363. "An assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.* When determining if the threat was ongoing at the time of the interrogation, courts should consider

9

issues such as the type of weapon, such as a gun compared to fists, and the victim's medical condition. *Id.* at 364–65.

Finally, the Court should take into consideration the "informality" of the interrogation. *Id.* at 366. "A 'formal station-house interrogation' . . . is more likely to provoke testimonial statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused." *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Bryant*, 562 U.S. at 366, 377).

Here, the Michigan Court of Appeals reasonably concluded that Cheatum's statements recorded by Officer Durr's body worn camera were nontestimonial because they described an ongoing emergency. *Cunningham*, 2023 WL 3666465, at *3. Cheatum was shot at by masked gunmen and ran over one of the men with his car, and drove immediately to the police station where he and Bledsoe, who was also in Cheatum's vehicle, spoke to Officer Durr in the parking lot. *Id.* "Both Cheatum and Bledsoe were excited and speaking over each other at times." *Id.* In the video, Cheatum stated, "They trying to ambush me, trying to rob me." *Id.* Cheatum and Bledsoe "described two masked men jumping out of the bushes and shooting at Cheatum's vehicle." *Id.* The Michigan Court of

Appeals reasonably concluded that their statements did not suggest that the threat to the public from the shooters had ended. *Id.*

Additionally, Cheatum and Bledsoe's statements included a description that they hit one of the gunmen with Cheatum's vehicle, which informed Officer Durr that a seriously injured man remained at the scene, a fact which Officer Durr immediately relayed on his radio. *Id.* During the interview with Cheatum and Bledsoe, Officer Durr also asked whether either of them had been injured and had "Cheatum lift his shirt to determine whether Cheatum sustained any injuries from the gunfire." *Id.* Under the circumstances, the Michigan Court of Appeals reasonably concluded that Cheatum's statements were not testimonial because they were made while an ongoing emergency existed; thus, the admission of the video did not violate the Sixth Amendment. Petitioner is not entitled to relief on his first claim.

### B. Petitioner's second claim: Jury instructions

Petitioner argues that his right to present a defense was violated when the state-court judge failed to instruct the jurors on the affirmative defense of defense of others.[2]

A defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "A necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *See Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002). A defendant is therefore entitled to a jury instruction "as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988).

Under Michigan law, self-defense or defense-of-others is an affirmative defense under certain circumstances. Mich. Comp. Laws §

---

[2] As with Petitioner's first claim, Petitioner argues that his counsel was ineffective for failing to make this objection at trial. The Court will address the merits of Petitioner's jury instruction claim, and will address his related ineffective assistance of counsel claim when discussing all of his ineffective assistance of counsel claims, *infra*.

780.972. A defendant must present "'some evidence' from which the jury can conclude that the essential elements of [the defense] are present." *People v. Leffew*, 508 Mich. 625, 644 (2022) (quoting *People v. Lemons*, 454 Mich. 234, 246 (1997)). In order to establish a defense-of-others defense with regard to use of deadly force, a defendant must demonstrate that he was "not engaged in the commission of a crime at the time  he [ ] used deadly force" and that he "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to" another person. Mich. Comp. Law § 780.972(1)(a).

As an initial matter, defense counsel never requested that the jury be instructed on the defense-of-others defense. A trial judge's failure to give an unrequested instruction is generally not an error that can provide habeas relief. *See Manning v. Rose*, 507 F.2d 889, 895 (6th Cir. 1974) ("As for appellant's claim that the trial judge's failure to give an unrequested alibi instruction was constitutional error, we find no error cognizable on federal habeas corpus."); *see also Lawrence v. Skipper*, No. 2:18-cv-11120, 2023 WL 4303572, at *4 (E.D. Mich. Jun. 30, 2023) (noting that a state court's "failure to give an unrequested instruction is not an error

13

cognizable in a federal habeas proceeding" (quoting *Miller v. Grant*, No. 93-2081, 1994 WL 102977, at *2 (6th Cir. Mar. 25, 1994))).

Second, the Supreme Court has never clearly established a criminal defendant's alleged constitutional right to a self-defense instruction; thus, the denial of a self-defense instruction by a state court in and of itself provides no basis for habeas relief under § 2254(d)(1). *See Keahey v. Marquis*, 978 F.3d 474, 479 (6th Cir. 2020). Because the defense-of-others claim is a corollary of the right to self-defense, it would appear that there is no constitutional right to an instruction on the right to defend another person.

Third, under Michigan law, a defendant cannot claim statutory defense-of-others if they were committing a crime when they used deadly force. *See* Mich. Comp. Laws § 780.972(1). As set forth by the Michigan Court of Appeals, the jury "specifically concluded that [Petitioner] acted with the intent to rob." *Cunningham*, 2023 WL 3666465, at *9.

> [T]he evidence established that Bledsoe, defendant, and Monson agreed to rob Cheatum. To this end, defendant and Monson armed themselves with defendant's firearms and wore masks and gloves. Outside, they changed the angle of the surveillance camera to film the treetops rather than the backyard and alley. Defendant then instructed Bledsoe to have Cheatum drive down the alley and she did so. Although

14

defendant claims that he and Monson agreed to abandon their plan, this conversation was not captured on the surveillance video. Further, no evidence indicates that they removed their masks or gloves, put away their guns, or took any other action which might suggest that they abandoned their plan. Although at trial defendant testified that he and Monson agreed to abandon the robbery, defendant acknowledged that he did not tell this to police during his interview and that he did not include this information in his written statement. Moreover, Monson, who testified at trial, did not testify that he and defendant agreed to abandon their plan. To the contrary, one of the last things Monson recalled was walking toward Cheatum's vehicle. In addition to Monson's testimony, Cheatum and Bledsoe both stated that masked men jumped out of the bushes at the vehicle. Monson, in particular, was described as pointing his gun at the vehicle. Further, the bullet hole in the windshield strongly supports Cheatum's account that Monson in fact fired at the vehicle.

*Id.* Because Petitioner and his co-defendant were attempting to rob the victim at gunpoint, neither could claim the right to self-defense or the right to defend their co-defendant.

Fourth, the Michigan Court of Appeals found that a defense-of-others instruction would not have provided a defense to the felon-in-possession conviction, because "the evidence, including defendant's own testimony, established unequivocally that he armed himself with a gun in his house, well before Cheatum arrived, and well before any conceivable danger to anyone existed." *Id.* at *8.

15

The Michigan Court of Appeals further held that, although the jury was not instructed on the defense-of-others defense, the jury heard Petitioner's theory that he lacked the intent to rob and acted to save Monson, but the jury rejected this theory and found that Petitioner acted with the intent to rob. The Michigan Court of Appeals held that based on the evidence presented, there was no reasonable probability "to undermine confidence in the verdict respecting defendant's assault-with-intent-to-rob-while-armed conviction." *Id.* at *9.

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. Petitioner is not entitled to habeas relief on his second claim.

## C. Petitioner's third and seventh claims: Destruction of evidence

Petitioner argues there is about 60 minutes of video footage missing from his home surveillance camera that captured himself and his two co-defendants inside of his home beginning around 5 a.m., before the failed robbery. (ECF No. 1, PageID.39–40.) According to Petitioner, the DVR containing that missing footage was reformatted while in the custody of the Muskegon Heights Police Department, which resulted in the permanent destruction of that evidence. (*Id.* at PageID.56.) Petitioner

16

alleges that there is no discussion of a conspiracy on the video footage that was played for the jury at trial and that it will never be known what conversation took place in the missing 60 minutes of video recording before Bledsoe left the room to obtain drugs from Cheatum. (*Id.* at PageID.39–40.) He argues the destruction of this "potentially exculpatory evidence" violates his right to due process and warrants habeas relief. (*Id.* at PageID.38.) Petitioner also seeks an evidentiary hearing related to the destruction of the missing video footage, particularly as it relates to Muskegon Heights Police Detective Marvin Petty's possession and delivery of the DVR to the Michigan State Police. (*Id.* at PageID.55–58.)[3]

To prevail on his claim, Petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

---

[3] As before, Respondent argues that the portion of Petitioner's claim involving Officer Petty was never exhausted with the state appellate courts and that the entire destruction of evidence claim is procedurally defaulted because it was never argued in the trial court. However, the Court will address the merits of Petitioner's third and seventh claims, regardless of whether the claims were properly exhausted or are procedurally defaulted, because Petitioner's claims are meritless. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991).

The *Brady* rule extends to evidence that is not suppressed but is altered or destroyed. *See Trombetta*, 467 U.S. at 489. For such evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.*

However, the failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). When the state fails to preserve evidentiary material "'of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant,' a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means." *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002) (quoting *Youngblood*, 488 U.S. at 57). A habeas petitioner has the burden of establishing that the police acted in

bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003) (*citing Lile v. McKune*, 45 F. Supp. 2d 1157, 1163 (D. Kan. 1999)). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.* "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56, n.*.

Petitioner's claim fails because his contention that the surveillance videotape from his house from before the attempted robbery contained exculpatory material is speculative. *See United States v. Jobson*, 102 F.3d 214, 219 (6th Cir. 1996). Although Petitioner claims that the destroyed surveillance tape would show that Petitioner and his co-defendants did not discuss robbing the victim, the actions of Petitioner and his co-defendants after this tape was made, particularly Petitioner and Monson donning masks and gloves and arming themselves with firearms, heavily suggest that the tape would not have negated the intent by Petitioner

19

and his co-defendants to rob Cheatum. *Cunningham*, 2023 WL 3666465, at \*13. "Where '[t]here is no indication that there was anything exculpatory' about destroyed evidence, due process has not been violated." *Jobson*, 102 F.3d at 219 (quoting *United States v. Braggs*, 23 F.3d 1047, 1051 (6th Cir. 1994)).

Petitioner's claims also fail because he has not fulfilled his burden demonstrating that the police acted in bad faith when they destroyed the surveillance tape. Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *See Malcum*, 276 F. Supp. 2d at 683. The mere fact that the police may have been negligent, or even grossly negligent, in destroying the videotape is insufficient to show that they acted in bad faith. *Monzo*, 281 F.3d 580.

Additionally, Petitioner has not demonstrated that he was unable to obtain comparable evidence by other means. *Trombetta*, 467 U.S. at 489. "The Sixth Circuit has held that eyewitness testimony and cross-examination of the government's witnesses constitute 'comparable evidence' to audio and video recordings." *United States v. Stevenson*, No.

CR 24-34-DLB-CJS, 2025 WL 2997857, at *3 (E.D. Ky. Oct. 24, 2025) (citing *Elmore v. Foltz*, 768 F.2d 773, 778 (6th Cir. 1985); *United States v. Gaither*, 65 F. App'x 514, 517 (6th Cir. 2003)). Here, Petitioner, Bledsoe, and Monson could have testified as to what occurred during that period of time before the attempted robbery. Because other forms of comparable evidence were available, Petitioner's claim fails.

Petitioner is not entitled to relief on his third and seventh claims.

## D. Petitioner's fourth claim: Use of the co-defendant's guilty plea as substantive evidence

Petitioner argues that the prosecution improperly used evidence of co-defendant Monson's guilty plea as substantive evidence against Petitioner.[4]

The guilty plea or conviction of a co-defendant is generally inadmissible at trial and may not be used as substantive evidence of the defendant's guilt. However, a co-defendant's guilty plea "may be

---

[4] Respondent urges this Court to deny this claim on the ground that it is procedurally defaulted because Petitioner failed to object at trial. Petitioner argues in his fifth claim that counsel was ineffective for failing to object. Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, the Court will consider the merits of the claim. *See Cameron,* 348 F. Supp. 2d at 836. The Court will address Petitioner's related ineffective assistance of counsel claim when discussing all of his ineffective assistance of counsel claims, *infra.*

introduced into evidence if the co-conspirator or co-defendant testifies at trial, so that the factfinder will have appropriate facts on hand to assess the witness's credibility." *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) (quoting *United States v. Blandford*, 33 F.3d 685, 709 (6th Cir. 1994)). "Thus, when the prosecution examines the codefendant as its witness in support of its case-in-chief, a question about the guilty plea is legitimate as the purpose is to support the reasonableness of the witness's claim to firsthand knowledge because of admitted participation in the very conduct which is relevant." *United States v. Christian*, 786 F.2d 203, 214 (6th Cir. 1986) (quoting *United States v. Halbert*, 640 F.2d 1000, 1005 (9th Cir. 1981)).

The Michigan Court of Appeals rejected this claim. It found that defense counsel contributed to any potential error by asking about Monson's statements during his plea agreement, and that in any event, the prosecution did not use Monson's plea as substantive evidence against Petitioner. Instead, the prosecution addressed Monson's plea in the context of arguments regarding his credibility. *Cunningham*, 2023 WL 3666465, at *15.

22

Petitioner is not entitled to habeas relief on his claim. No objection was made to the admission of Monson's guilty plea and the testimony does not rise to the level of a due process violation because "the terms of the guilty plea were relevant on the question of [Monson's] credibility." *See Foster v. Straub*, 22 F. App'x 403, 404 (6th Cir. 2001). Petitioner is not entitled to habeas relief on his fourth claim.

### E. Petitioner's first, second, fourth, and fifth claims: Ineffective assistance of counsel

In portions of his first, second and fourth claims, and in the entirety of his fifth claim, Petitioner alleges that he was denied the effective assistance of trial counsel. He further alleges that the Michigan Court of Appeals erred in failing to remand his case to the trial court to conduct an evidentiary hearing on his ineffective assistance of trial counsel claims pursuant to *People v. Ginther*, 390 Mich. 436, 443 (1973), and Michigan Court Rule 7.211(C)(1). (*See, e.g.*, ECF No. 1, PageID.43–44.)

Petitioner argues his trial counsel was constitutionally ineffective when he failed to: (a) impeach Officer Durr regarding the nature of the bullet holes in Cheatum's vehicle; (b) call the author of the ballistics report, Michigan State Police Forensic Scientist Ashleigh Vogel, to support Petitioner's assertion that a third gun was fired at the scene and

23

that Cheatum was the first aggressor; (c) impeach Bledsoe regarding her statements on Officer Durr's bodycam; (d) consult with a gun expert; (e) question Sergeant Shaun Kozal regarding statements Petitioner purportedly made that were recorded on Sergeant Kozal's bodycam; (f) request a defense-of-others jury instruction; (g) object to the admission of Cheatum's statements recorded on Officer Durr's bodycam; (h) bring a motion to dismiss based on Cheatum's absence at trial; (i) investigate the timing in which Petitioner's home was searched and challenge the search; and (j) watch all the videos from Petitioner's home surveillance camera and the police officers' body worn cameras.[5] (*Id.* at PageID.45–50.)

### i. *Evidentiary hearing on ineffective assistance of counsel*

First, the Court does not have the power to grant habeas relief on his claim that the Michigan Court of Appeals improperly denied his

---

[5] Respondent notes that four of Petitioner's ineffective assistance of counsel subclaims (a, b, c, and j) were never properly exhausted with the Michigan appellate courts but nonetheless argues that the claims should be denied on the merits. A federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. *See Cain*, 947 F.2d at 820. As such, the Court will adjudicate these claims on the merits.

motion to remand for a *Ginther* hearing pursuant to Michigan Court Rule 7.211.

A *Ginther* hearing is "the Michigan process for developing facts to support an ineffective-assistance [of counsel] claim." *Unger v. Bergh*, 742 F. App'x 55, 58 (6th Cir. 2018). Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Whether the Michigan Court of Appeals erred in denying Petitioner's motion for a *Ginther* hearing on his ineffective assistance of counsel claims is a question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (holding that "[w]hether or not the Michigan courts complied with the procedural requirements of Michigan law" and *Ginther*, 390 Mich. 436, "is not a matter for this court to decide on a petition for habeas corpus relief"); *Litteral v. Palmer*, No. 08-CV-11172, 2010 WL 2633595, at *14 (E.D. Mich. June 29, 2010) ("*Ginther* does not confer an absolute right to an evidentiary hearing in all cases where a defendant alleges ineffective assistance of counsel, and 'federal habeas corpus relief does

not lie for errors of state law.'" (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))).

Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. *Hayes*, 193 F. App'x at 585. Accordingly, Petitioner would not be entitled to habeas relief on this portion of his claim.

### ii.   *Individual claims of ineffective assistance of counsel*

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two-prong test. First, Petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S.

26

91, 101 (1955)). Second, Petitioner must show that such performance prejudiced his defense. *Id.* at 693. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### a.   Failure to impeach Officer Durr

Petitioner argues that trial counsel was ineffective for failing to impeach Officer Durr regarding the details of the bullet holes in Cheatum's vehicle. (ECF No. 1, PageID.45.) Petitioner argues that the bullet hole in Cheatum's windshield protruded outwards, implying that Cheatum fired a gun, which could support Petitioner's claim that Petitioner shot at Cheatum to defend himself or his co-defendant. (*Id.* at PageID.32.) Petitioner argues that Officer Durr should have deduced, from the bullet holes and Petitioner's own 911 call, that Cheatum was the initial aggressor. Petitioner claims trial counsel should have elicited that testimony from Officer Durr and was ineffective for not doing so.

A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004). A defense lawyer also has

27

no duty to present impeachment evidence that would be of marginal utility. *See United States v. Munoz*, 605 F.3d 359, 381–82 (6th Cir. 2010).

Petitioner has not overcome the presumption that his counsel's performance was sound. Petitioner has not presented any evidence of record to the state courts nor to this Court that Cheatum fired a weapon at anyone on the night in question. The Michigan Court of Appeals, in examining another ineffective assistance of counsel claim, discounted Petitioner's theory that there was a third gun at the scene or that Cheatum had a gun:

> [A]n obvious problem with defendant's third-gun theory is that *no one*—including defendant—testified that Cheatum fired a gun in the alley. Establishing that there were nine-millimeter, Luger cartridges in the alley that did not match defendant's gun or the gun used by Monson, would not have aided the defense because there would still be no evidence to link those cartridges to Cheatum or place a gun in Cheatum's hand. Indeed, defendant's basic argument on appeal appears to be that establishing the presence of a third gun in the alley would have aided his defense-of-others theory. But absent testimony that defendant believed that Cheatum fired or possessed a gun, evidence about cartridge casings later found in the alley has no bearing on what defendant honestly and reasonably believed when he fired at Cheatum.

*Cunningham*, 2023 WL 3666465, at *10 (emphasis original, internal footnote omitted). Furthermore, Petitioner testified he was acting in

defense of Monson because Cheatum struck Monson with his vehicle—
not because Cheatum fired a gun at Monson. (ECF No. 8-7, PageID.850–
852).

Because Petitioner cannot demonstrate that his counsel had reason
to impeach Officer Durr in this manner, he has not overcome his burden
to demonstrate that his counsel performed ineffectively. As such, defense
counsel did not perform ineffectively by not cross-examining Officer Durr
about the bullet holes in Cheatum's vehicle.

### b.    Failure to call Ashleigh Vogel

Petitioner next alleges that trial counsel was ineffective for not
calling Ashleigh Vogel, who authored the ballistics report, to testify about
nine-millimeter Luger cartridges being found at the scene. (ECF No. 1,
PageID.45–46.) Again, Petitioner claims that this report would establish
that Cheatum was armed with a nine-millimeter handgun on the night
in question and had been the initial aggressor, so as to support
Petitioner's self-defense or defense-of-others claim.

Again, there is no evidence that Cheatum was ever in possession of
a firearm or discharged one on the night in question. *Cunningham*, 2023
WL 3666465, at *10. Neither Bledsoe, Monson, nor Petitioner himself

testified as such. Petitioner has not met the high burden to show that his counsel was ineffective in failing to call Ms. Vogel because Ms. Vogel could have offered only marginal support for Petitioner's self-defense or defense-of-others claim. *See, e.g.*, *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001).

### c.   Failure to impeach Bledsoe

Petitioner argues that counsel was ineffective for failing to impeach Bledsoe with her statements on Officer Durr's body worn camera video. (ECF No. 1, PageID.46.) Petitioner claims that, in the video, Bledsoe told Officer Durr that Petitioner and Monson did not start shooting until after Cheatum hit Monson, whereas her trial testimony indicates Monson shot Cheatum's windshield at the same time Cheatum drove at Monson. (*Id.*) According to Petitioner, Bledsoe's statements in the video—that no shots were fired until after Cheatum struck Monson with his car—would have corroborated Petitioner's defense-of-others defense; thus, counsel should have impeached Bledsoe's trial testimony on that point. (*Id.*)

Petitioner's claim lacks merit. Bledsoe testified that Monson jumped out of the bushes and pointed a gun at Cheatum's windshield. (ECF No. 8-7, PageID.679–681, 683, 698–700), showing that Monson was

30

the first aggressor. Whether the shots were fired before or after Cheatum hit Monson with his vehicle is irrelevant. Petitioner could not claim he acted in self-defense of Monson because Monson was the initial aggressor. *Cunningham*, 2023 WL 3666465, at *9.

Counsel also effectively impeached Bledsoe on several points, including the fact that she was testifying in hopes that she would get a favorable plea deal and/or sentencing recommendation; her lying to police, including Officer Durr; and her prior criminal history, including several crimes of theft and dishonesty. (ECF No. 8-7, PageID.685–706.)

Impeachment strategy falls within the category of an attorney's trial tactics that are difficult to attack. *Tackett v. Trierweiler*, 956 F.3d 358, 374 (6th Cir. 2020). In the present case, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined Bledsoe (*see* ECF No. 8-7, PageID.685–706), and, in his closing argument, emphasized the weaknesses in her testimony and credibility. (ECF No. 8-8, PageID.917–921, 928–931); *see Krist v. Foltz*, 804 F.2d 944, 948–49 (6th Cir. 1986); *Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002). "Although other attorneys might have reached a different

31

conclusion" about the value of cross-examining Bledsoe in greater detail, counsel's strategic choice not to further cross-examine Bledsoe was "'within the wide range of reasonable professional assistance.'" *Moss v. Hofbauer*, 286 F.3d 851, 864 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). While counsel "could have further probed the inconsistencies highlighted by" Petitioner, "his failure to do so in light of the otherwise extensive cross-examination does not undermine the presumption that his 'conduct falls within the wide range of reasonable professional assistance.'" *Moss v. Olson*, 699 F. App'x 477, 487 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 689).

As such, Petitioner's argument that his counsel's failure to impeach Bledsoe fails.

### d.    Failure to consult a gun expert

Petitioner next argues that trial counsel should have consulted with a gun expert to investigate the bullet holes in Cheatum's vehicle, and that a gun expert would have corroborated his claim that Cheatum was the first aggressor and that Petitioner acted in defense of Monson. (ECF No. 1, PageID.47.)

32

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006). Petitioner failed to provide any evidence, either to the state courts or this Court, that an expert would have testified that the bullet holes in Cheatum's vehicle were caused by Cheatum firing a weapon at Petitioner and his co-defendant. Without such proof, Petitioner is unable to establish that he was prejudiced by his counsel's failure to investigate or to call a gun expert, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

### e.   Failure to question Sergeant Kozal about Petitioner's statements on the bodycam

Petitioner argues his trial counsel should have called Sergeant Kozal to testify about Petitioner's statements, which "corroborate[d] that Cheatum was the initial aggressor. (ECF No. 1, PageID.47.) These statements, according to Petitioner, were recorded on Officer Kozel's body worn camera.

33

Under Michigan law, a defendant's self-serving hearsay statements are properly excluded from evidence. *See People v. Compton*, 23 Mich. App. 42, 45 (1970); *see also People v. Jensen*, 222 Mich. App. 575, 581 (1997), *vacated in part on other grounds*, 456 Mich. 935 (1998); *People v. Porter*, No. 202855, 1999 WL 33453363, at *2 (Mich. Ct. App. Mar. 16, 1999) ("[I]t is well-settled that a criminal defendant may not place his exculpatory, out-of-court statement into evidence."). Because Petitioner's allegedly exculpatory statement to the police would have been inadmissible hearsay evidence, his counsel was not ineffective in failing to attempt to introduce Petitioner's statement to the police into evidence.[6] *See, e.g.*, *Ryder v. Kerns*, 335 F. App'x 529, 537 (6th Cir. 2009).

### f.   Failure to request a defense-of-others instruction

As part of his second claim, Petitioner argues that trial counsel was ineffective for failing to request a defense-of-others jury instruction. (ECF No. 1, PageID.29; *see also id.* at PageID.47.)

---

[6] The Court also notes that there is no indication in Petitioner's pleadings that his out-of-court statement to the police would have been admissible as a present sense impression, an excited utterance, or any of the other exceptions to Michigan's hearsay rule

When addressing the other portion of Petitioner's second claim, *supra* III.B., the Michigan Court of Appeals found that Petitioner was not prejudiced by the failure of such an instruction because "the evidence overwhelmingly supported that Monson acted as the initial aggressor." *Cunningham*, 2023 WL 3666465, at *9. Because Petitioner failed to show that under Michigan law he would have succeeded in presenting a defense-of-others claim, Petitioner was not prejudiced by counsel's failure to request a jury instruction on this defense. *See, e.g.*, *Hudson v. Bradley*, 764 F. App'x 494, 498–500 (6th Cir. 2019).

### g.    Failure to object to the admission of Cheatum's statements on bodycam video

Petitioner alleges as part of his first claim that his counsel was ineffective for not objecting to the admission of Officer Durr's bodycam video containing Cheatum's statements about the incident. (ECF No. 1, PageID.47–48.) As discussed when addressing Petitioner's first claim, *supra* III.A., the admission of Cheatum's bodycam statement to Officer Durr did not violate the Confrontation Clause. Accordingly, counsel was not ineffective for failing to object to its admission on this basis. *See, e.g.*, *United States v. Johnson*, 581 F.3d 320, 328 (6th Cir. 2009).

### h.    Failing to file a motion to dismiss

35

Petitioner next argues that trial counsel was ineffective for failing to bring a motion to dismiss based on Cheatum's absence at trial. (ECF No. 1, PageID.48–49.)

Under Michigan law, a trial court judge cannot dismiss a criminal charge against a defendant based on a complaining witness's failure to appear at trial, as this is a usurpation of "the prosecutor's exclusive authority to decide whom to prosecute." *People v. Williams*, 244 Mich. App. 249, 251–52 (2001). Had Petitioner's counsel filed a motion to dismiss of this nature, it would have failed. "Failing to file a frivolous motion does not constitute ineffective assistance of counsel." *See Goldsby v. United States*, 152 F. App'x 431, 438 (6th Cir. 2005). Additionally, to the extent that Petitioner suggests within this claim that his counsel was ineffective for failing to object to references to Monson's guilty plea (*see* ECF No. 1, Page.ID.49), Petitioner does not explain why these references were impermissible or on what basis his counsel should have objected.

> ### i. Failure to investigate when police searched Cunningham's home and to challenge that search

Petitioner next argues that his counsel "failed to determine from the home surveillance video when the time of [the] search actually

36

occurred as requested by [Petitioner]." (ECF No. 1, PageID.49.) Petitioner alleges that the police searched his home before obtaining his consent and trial counsel was ineffective for failing to investigate this issue or challenge the search on Fourth Amendment grounds. (*Id.*)

The Michigan Court of Appeals rejected this claim as follows:

This argument fails because defendant bears the burden of establishing the factual predicate of his claim, and defendant failed to provide this Court with a record to support that the police searched his home before obtaining a warrant or his consent or both.

At trial, Detective Perez testified that the police had both a search warrant and a signed consent "in hand" when they searched defendant's home, and no evidence in the lower court record contradicts this testimony. Even on appeal, while seeking a remand, defendant failed to provide this Court with an offer of proof to support his assertions. Defendant claims that his interrogation video establishes the timing of his consent. Yet, in response to this Court's request for a recording of the interrogation admitted at trial, defendant provided this Court with a video without any audio and without any time stamps, despite his claim that there is a time stamped video showing when he gave his consent to search. He also failed to provide this Court with the warrant or any evidence to establish the time that the police executed the search. There is, in short, no factual support for defendant's argument that police searched his home before obtaining a warrant or his consent. Absent an offer of proof to

support his claim, he has not shown a need for a remand on this issue.

*Cunningham*, 2023 WL 3666465, at \*13 (internal footnotes and citations omitted). The Michigan Court of Appeals further indicated:

> In his Standard 4 brief, defendant also raises an argument regarding the timing of the search, specifically that the video would show that he gave his consent to the search at 10:41 a.m. The consent form signed by defendant, which was admitted at trial as defense Exhibit A, however, indicated that defendant gave his consent at 9:33 a.m. Regardless, there is ultimately no factual support for defendant's argument that police searched his home before obtaining a warrant or his consent.

*Id.* at \*13 n.11. The Michigan Court of Appeals also found:

> With his Standard 4 brief, defendant provides this Court with one, unsigned page of what appears to be at least a 10-page report, and defendant contends that this document supports that the search took place at 8:55 a.m. This document discusses a number of activities by police, including talking with Cheatum, speaking with Bledsoe, arresting defendant, and executing a search warrant on defendant's home. The document does not state the time that the search occurred. This document is also not part of the lower court record, meaning that, at most, we consider it to determine whether a *Ginther* hearing is warranted. We see no need for such a hearing in this case.

*Id.* at \*13 n.12 (internal citations omitted).

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). A habeas petitioner is not entitled to relief on an ineffective assistance of counsel claim unless he can establish the factual predicate on which the claim is based. *See Vinson v. McLemore*, 226 F. App'x 582, 584 (6th Cir. 2007). Petitioner failed to do so in this case and is not entitled to relief on this claim.

### j.    Failure to watch all the video evidence

Finally, Petitioner argues that trial counsel was ineffective for failing to watch all the videos from his home surveillance camera and recorded by the officers' body worn cameras. (ECF No. 1, PageID.49–50.) Petitioner alleges that his counsel was unaware of several exculpatory facts that could have been found from watching the videos. (*Id.*)

Conclusory allegations of ineffective assistance of counsel do not provide a basis for habeas relief. *See Workman v. Bell*, 160 F.3d 759, 771

39

(6th Cir. 1998). Petitioner's bare assertion that his trial counsel failed to adequately investigate his case by obtaining and reviewing the evidence is insufficient to support his ineffective assistance of counsel claim. *See Starcher v. Wingard*, 16 F. App'x 383, 388 (6th Cir. 2001).

Regarding Petitioner's home surveillance camera and the missing footage, the Michigan Court of Appeals found that Petitioner's claim that his counsel failed to review the videos is "unsupported by the record" and that Petitioner could not show prejudice from his counsel's handling of that video evidence. *Cunningham*, 2023 WL 3666465, at \*12–13. Petitioner has offered no evidence to rebut these factual findings. He is not entitled to relief on his ineffective assistance of counsel claims.

### F. Petitioner's sixth claim: Erroneous factual findings

Petitioner finally argues that the Michigan Court of Appeals "erred when it relied on erroneous factual findings not supported by the record," which "negatively impacted the integrity of [his] conviction[s]." (ECF No. 1, PageID.50.) Petitioner points to six factual findings that he claims are erroneous. (*Id.* at PageID.50–55.)

"[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the

40

presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1); *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)). Moreover, "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011). Petitioner has not made either showing here.

Petitioner first argues that the Michigan Court of Appeals erred when it stated, "according to defendant's instructions Bledsoe directed Cheatum to drive down a nearby alley where defendant and Monson lay in wait." (ECF No. 1, PageID.50 (quoting *Cunningham*, 2023 WL 3666465, at *1).) Petitioner claims the trial testimony shows that he and Monson were "flummoxed when Cheatum drove down th[e] alley towards them." (ECF No. 1, PageID.50.)

Bledsoe, however, testified that either Petitioner or Monson told her to bring Cheatum down the alley where both men waited (ECF No. 8-7, PageID.678 ("I don't remember if it was Mr. Cunningham or . . . Mike, but one of them told me to make sure to bring him around the

41

alley")), and Petitioner later admitted he said to Bledsoe, "[T]ell them to pull down on the end of the alleyway." (*Id.* at PageID.842–843.) This finding by the Michigan Court of Appeals is supported by the record.

Petitioner next alleges the Michigan Court of Appeals erred when it stated that "Monson shot at Cheatum's vehicle." (ECF No. 1, PageID.53 (quoting *Cunningham*, 2023 WL 3666465, at *1).) Bledsoe, however, testified that Monson fired at least one shot into Cheatum's front windshield. (ECF No. 8-7, PageID.681, 702–703.) This finding is supported by the record.

Petitioner next argues the Michigan Court of Appeals erred when it stated, "Although defendant claimed that Cheatum repeatedly drove forward and back over Monson, no physical evidence on the vehicle—such as blood or hair—supported that the vehicle came in repeated contact with Monson." (ECF No. 1, PageID.53–54 (quoting *Cunningham*, 2023 WL 3666465, at *9).) Sergeant Kozal testified that there was no blood or hair found on Cheatum's vehicle and that he did not see any evidence that the vehicle repeatedly struck Monson. (ECF No. 8-7, PageID.738–739, 745–746). Petitioner fails to rebut this factual finding with clear and convincing evidence.

42

Fourth, Petitioner argues the Michigan Court of Appeals erred when it stated, "[T]here is no evidence that Cheatum, Bledsoe, or Officer Durr knew of defendant's 911 call[.]" (ECF No. 1, PageID.54 (quoting *Cunningham*, 2023 WL 3666465, at *3 n.1).) Petitioner, however, leaves out the very next line, in which the Michigan Court of Appeals stated, "to the contrary, Officer Durr testified that he spoke to Cheatum before hearing of a 911 call or 'anything like that.'" *Cunningham*, 2023 WL 3666465, at *3 n.1. This is confirmed in the trial court record with Officer Durr's testimony, as is the fact that Bledsoe did not testify as to whether she knew Petitioner placed a 911 call. (ECF No. 8-7, PageID.656–657, 668–709). Petitioner has not rebutted this factual finding by clear and convincing evidence.

Fifth, with respect to Petitioner's claim about counsel being ineffective for not questioning Sergeant Kozal about statements Petitioner allegedly made recorded by Sergeant Kozal's body worn camera, Petitioner takes issue with the Michigan Court of Appeals stating that "the existing record . . . includes no information whatsoever about the police officer[.]" (ECF No. 1, PageID.55 (quoting *Cunningham*, 2023 WL 3666465, at *11).) Petitioner states that "[t]he unidentified

policy officer was referred to as the first responding officer in Petitioner's Court of Appeals brief," and that Sergeant Kozal testified that he was "on the scene first[.]" (ECF No. 1, PageID.55 (citing ECF No. 8-7, PageID.720).)

Contrary to Petitioner's assertion, his brief before the Michigan Court of Appeals only used the words "responding officer." (Pet'r's Br. on Appeal to Mich. Ct. Appeals, ECF No. 8-10, PageID.1224, 1230). Many officers could be considering "a responding officer." Petitioner fails to show that the Michigan Court of Appeals' inability to determine which officer Petitioner was referring to was incorrect. Therefore, he fails to rebut this factual finding by clear and convincing evidence.

Finally, Petitioner takes issue with the Michigan Court of Appeals treating his destruction-of-evidence claim as unpreserved. *See Cunningham*, 2023 WL 3666465, at *14. He states, "[t]he reason trial counsel failed to raise this is[s]ue is because the extent of the destruction of evidence (Reformatting of DVR) was not discovered or did not occur until after trial." (ECF No. 1, PageID.55.) This excuse does not alter the state appellate court's finding that trial counsel failed to raise that issue in the trial court, thus rendering it unpreserved. Thus, Petitioner failed

to show that this factual finding is incorrect. Petitioner is not entitled to relief on this claim.

For the reasons set forth above, the petition for a writ of habeas corpus is denied.

### G.  Petitioner's motion to appoint counsel (ECF No. 15)

Petitioner filed several motions, which the Court will address now.

First, with regard to Petitioner's motion to appoint counsel (ECF No. 15), Petitioner's motion is denied. There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). The Court denies Petitioner's motion for the appointment of counsel because "exceptional circumstances justifying the appointment of counsel" are not present here. *See Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004).

### H. Petitioner's motion to supplement the record (ECF No. 16)

Petitioner filed a motion to supplement the record (ECF No. 16) to include evidence in support of his claim that the videotaped surveillance evidence from his home had been destroyed and to suggest that the surveillance videotape from his home that was provided by Respondent

in response to the Court's Order Compelling State Record on June 14, 2025 (ECF No. 14), was somehow fabricated.

Rule 7 (a) of the Rules Governing § 2254 Cases indicates that if a habeas petition is not summarily dismissed, the district court judge "may direct the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." A federal district court judge may employ a variety of measures to avoid the necessity of an evidentiary hearing in a habeas case, including directing expansion of the record to include evidentiary materials that may resolve the factual dispute without the need for an evidentiary hearing. *Blackledge v. Allison*, 431 U.S. 63, 81–82 (1977). The decision whether to expand a habeas record is within the sound discretion of the district court. *See West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008).

The Court grants Petitioner's motion to supplement the record. The Court, however, will not grant Petitioner habeas relief on this claim because he has not presented evidence that this surveillance videotape was fabricated as opposed to being eventually restored by a state laboratory in Lansing, Michigan, as Petitioner's exhibits suggest was being attempted. (ECF No. 16, PageID.1674, 1681, 1686–1688).

46

## I. Petitioner's motion for summary judgment (ECF No. 17)

Finally, Petitioner filed a motion for summary judgment. (ECF No. 17.) Because the Court has determined that Petitioner is not entitled to federal habeas relief, Petitioner's motion for summary judgment is denied as moot. *See Ortiz v. Williams*, 489 F. Supp. 2d 381, 386 (D. Del. 2007).

## IV. Conclusion

For the reasons set forth above,

The Court DENIES the petition for a writ of habeas corpus and the petition is DISMISSED WITH PREJUDICE. (ECF No. 1.)  Petitioner's motions for the appointment of counsel (ECF No. 15) and for summary judgment (ECF No. 17) are DENIED. Petitioner's motion to supplement the record (ECF No. 16) is GRANTED.

It is further ordered that a Certificate of Appealability is DENIED and that Petitioner will be DENIED leave to appeal *in forma pauperis*.

In order to obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the

47

petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker*, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). The Court also denies Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

IT IS SO ORDERED.

Dated: February 3, 2026            s/Judith E. Levy
Ann Arbor, Michigan                JUDITH E. LEVY
                                   United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 3, 2026.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager